UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEA THAI,<br><br>　　　　　　Petitioner,<br><br>v.<br><br>PATRICIA HYDE, Field Office Director, MICHAEL KROL, HIS New England Special Agent in Charge, and TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security, DEPARTMENT OF HOMELAND SECURITY,<br><br>　　　　　　Respondents. | Civil Action No. 25-cv-11499-NMG |

## **RESPONDENTS' RESPONSE TO PETITION**

Respondents, Patricia Hyde, Michael Krol, Todd Lyons, Kristi Noem, and Department of Homeland Security,[1] by and through their attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submit this opposition to Hea Thai's ("Petitioner") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Doc. 1.

Petitioner, who is currently being detained by U.S. Immigration and Customs Enforcement ("ICE"), filed this Petition pursuant to 28 U.S.C. § 2241, which vests courts with authority to issue writs of habeas corpus to individuals "in custody in violation of the Constitution or laws or treaties

---

[1] Petitioner fails to name his immediate custodian as a respondent in this matter as required by the Supreme Court and the U.S. Court of Appeals for the First Circuit. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004) and *Vasquez v. Reno*, 233 F.3d 688 (1st Cir. 2000). The Court lacks jurisdiction over the supervisory officials named as Respondents to this action. *See Vasquez*, 233 F.3d at 696 (explaining that supervisory officials are not proper respondents to habeas actions, holding that "as a general rule, the Attorney General is neither the custodian of such an alien in the requisite sense nor the proper respondent to a habeas petition.").

1

of the United States." The Petition asserts one cause of action challenging Petitioner's arrest and detention as violating the Fifth Amendment's due process clause. Doc. 1 at p. 3. Petitioner claims that his arrest and detention are "without cause and in violation of his constitutional rights to due process of law", but he does not describe how or why. *Id*. Petitioner asks the Court to "[d]eclare that [his] detention violates the Due Process Clause of the Fifth Amendment," and "[i]ssue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately." *Id*.

But Petitioner is subject to a final order of removal and is being detained pursuant to 8 U.S.C. § 1231. Petitioner violated the terms of his supervised release, which prompted ICE to revoke his Order of Supervision and detain him. ICE's continued detention of Petitioner for purposes of effectuating his removal is fully supported by the Immigration and Nationality Act ("INA"), its implementing regulations, and the Constitution. Accordingly, Petitioner's detention is lawful, Petitioner has no entitlement to release aside from his return to his home country of Cambodia, and his Petition must be dismissed.

**FACTUAL BACKGROUND**

Petitioner is a 54-year-old native and citizen of Cambodia. Doc. 1 ¶ 1; *see also* Declaration of Keith Chan, Assistant Field Office Director, U.S. Department of Homeland Security ("Chan Decl."), ¶ 6. On December 8, 2008, Petitioner was arrested by the Drug Enforcement Agency for the offense of possession with intent to distribute Methylenedioxymethamphetamine. *See* Chan Decl. ¶ 13. On June 10, 2010, Petitioner was convicted of conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 in the United States District Court for the District of Pennsylvania. *Id.* Petitioner was sentenced to thirty-three months imprisonment and five years supervised release. *Id.* Petitioner was placed into removal proceedings. *See* Chan Decl. ¶ 7. He was charged as removable under 8 U.S.C. §1227(a)(2)(A)(iii)

because he had committed a drug trafficking aggravated felony.  *Id.*  On March 1, 2011, an Immigration Judge ordered the Petitioner removed to Cambodia.  *See* Chan Decl. ¶ 8.  Petitioner did not reserve appeal and the order became administratively final.  *Id.*  On or about April 3, 2012, Petitioner was detained to effectuate his order of removal.  *See* Chan Decl. ¶ 9.  Petitioner was released subject to an Order of Supervision on or about July 10, 2012.  *Id.*

On May 25, 2025, ICE encountered Petitioner while targeting another Cambodian citizen.  *See* Chan Decl. ¶ 10.  During the consensual encounter, ICE officers observed several pill bottles filled with rolled wads of cash.  *Id.*  ICE questioned Petitioner about where he was living.  *Id.*  Petitioner produced his driver's license and stated that he was living at the address on the license— 43A Coburn Street in Lynn, Massachusetts—the address that is on file with ICE.  *Id.*  However, the passenger in Petitioner's car stated that Petitioner was living with him at 10 Light Street in Lynn, Massachusetts.  *See* Chan Decl. ¶ 10.  Further database investigation showed a potential third address of 41 11th Street, Apt. 2, in Lowell, Massachusetts.  *Id.*  During questioning, ICE determined that Petitioner was being deliberately evasive about his residence and determined that Petitioner had violated his terms of supervision by failing to notify ICE of an address change within 48 hours.  *Id.*  As a result, ICE arrested and detained Petitioner and revoked his order of supervision under 8 U.S.C. § 241.4(l).  *See* Chan Decl. ¶ 11.

Since January 2025, ICE has removed at least 25 Cambodian citizens to Cambodia.  *See* Chan Decl. ¶ 12.  To that end, ICE has determined that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, and it expects to be able to effectuate Petitioner's order of removal expeditiously.  *Id.*

**LEGAL STANDARD**

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Section 2241 of Title 28 of the United States Code provides district courts with jurisdiction to hear federal habeas petitions. It is Petitioner's burden to establish entitlement to a writ of habeas corpus by proving that his custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

**ARGUMENT**

ICE's detention of Petitioner is authorized by statute and regulation and does not offend the Constitution.

**A.     Petitioner Is Lawfully Detained Pursuant To 8 U.S.C. § 1231**

ICE's detention authority stems from 8 U.S.C. § 1231 which provides for the detention and removal of aliens with final orders of removal. Section 1231(a)(1)(A) directs immigration authorities to remove an individual with a final order of removal within a period of 90 days—this is known as the "removal period." During the removal period, § 1231(a)(2) commands that ICE "shall detain" the final order alien. If, however, the removal period has expired, ICE can either release an individual pursuant to an Order of Supervision as directed by Section 1231(a)(3) or may continue detention under Section 1231(a)(6). Per Section 1231(a)(6), ICE may continue detention beyond the removal period for three categories of individuals:

- Those who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;
- Those who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or

4

- Those whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal."

Because Petitioner's prior order of removal was final in 2011, Petitioner is now outside of the 90-day removal period during which the government "shall detain" the individual. 8 U.S.C. § 1231(a)(2). However, 8 U.S.C. § 1231(a)(6) allows ICE to detain Petitioner because he is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as Petitioner was neither admitted nor paroled in the United States upon entry. As such, ICE has statutory authority to detain Petitioner to effectuate his removal order from the United States and he is not entitled to a bond hearing or release as Section 1231(a)(6) does not contemplate such process.

The Supreme Court in *Johnson v. Arteaga-Martinez* answered the question of "whether the text of § 1231(a)(6) requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." 596 U.S. 573, 574 (2022). The Court answered that question definitively, holding that Section 1231(a)(6)'s plain text, which "says nothing about bond hearings before immigration judges or burdens of proof" … "directs that we answer this question in the negative." *Id.* at 581.

As such, Petitioner's claim that he is entitled to release is foreclosed by statute and Supreme Court precedent.

**B.    ICE's Revocation of Release Comports with Regulation and Constitution.**

While 8 U.S.C. § 1231(a)(3) is silent as to revocation procedures for individuals like Petitioner who are released pursuant to an Order of Supervision, ICE has issued Post-Order Custody Regulations ("POCR") contained at 8 C.F.R. § 241.4 to set forth mechanisms concerning custody reviews, release from ICE custody, and revocation of release for individuals with final orders of removal.

The regulatory provisions concerning revocation of release are contained at 8 C.F.R. § 241.4(l) and provide significant discretion to ICE to revoke release. *See Leybinsky v. U.S. Immigr. & Customs Enf't,* 553 F. App'x 108, 110 (2d Cir. 2014) (remarking on the "broad discretionary authority the regulation grants ICE" to revoke release."); *Rodriguez v. Hayes*, 591 F.3d 1105, 1117 (9th Cir. 2010) (explaining that while the revocation regulation "provides the detainee some opportunity to respond to the reasons for revocation, it provides no other procedural and no meaningful substantive limit on this exercise of discretion ….").

Under these regulations, ICE can revoke release when an individual violates his conditions of release. *See* 8 C.F.R. § 241.4(l)(1) ("Any alien…who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody"). When ICE revokes release of an individual under 8 C.F.R. § 241.4(l), ICE must conduct an "informal interview" to advise the individual of the basis for revocation and must also serve the individual with a written notice of revocation. *Id.* If ICE determines revocation remains appropriate after conducting the informal interview, then ICE will provide notice to the individual of a further custody review that "will ordinarily be expected to occur within approximately three months after release is revoked." 8 C.F.R. § 241.4(l)(3). However, ICE is not required to "conduct a custody review under these procedures when [ICE] notifies the alien that it is ready to execute an order of removal." 8 C.F.R. § 241.4(g)(4); *Rodriguez-Guardado v. Smith,* 271 F. Supp. 3d 331, 335 (D. Mass. 2017).

Here, during an encounter on May 25, 2025, ICE determined that Petitioner violated the terms of his supervised release. *See* Chan Decl. ¶ 10. As a result, his Order of Supervision was revoked in accordance 8 C.F.R §241.4(l). *See* Chan Decl. ¶ 11. Moreover, ICE is ready to effectuate Petitioner's removal. Since January 2025 ICE has removed at least 25 Cambodian

citizens to Cambodia and anticipates being able to remove Petitioner to Cambodia under these same circumstances. *Id.* Accordingly, ICE has complied with its POCR regulations.

Courts routinely conclude that compliance with the POCR regulations protect an individual's Constitutional rights while detained. *See e.g., Moses v. Lynch*, No. 15-cv-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) ("When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required."); *Portillo v. Decker*, No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *6 (S.D.N.Y. Mar. 18, 2022) (collecting cases supporting conclusion that the POCR framework has routinely been deemed constitutional and noting that petitioner had not "cite[d] legal authority in support of his generalized laments about the administrative process.").

Because Petitioner does not allege that ICE violated any specific procedures under the applicable regulation, his petition should be denied. *See, e.g.*, *Doe v. Smith*, Civil Action No. 18-11363-FDS, 2018 WL 4696748, at *7 (dismissing habeas claim where "there was no regulatory violation" in connection with custody reviews); *Perez v. Berg*, No. 24-CV-3251 (PAM/SGE), 2025 WL 566884, at *7 (D. Minn. Jan. 6, 2025), *report and recommendation adopted,* No. CV 24-3251 (PAM/ECW), 2025 WL 566321 (D. Minn. Feb. 20, 2025) (finding no due process violation "[a]bsent an indication that ICE failed to comply with its regulatory obligations in some more specific way".).

To the extent Petitioner seeks this Court to conduct its own custody review or to analyze ICE's custody determinations, as explained by another court, "[s]uch arguments are not proper here. It is ICE's province under 8 U.S.C. § 1231(a)(6) to determine whether a removable alien such as [petitioner] should be detained past the 90-day removal period" … as Congress has

"eliminated judicial review of immigration-related matters for which ICE [] has discretion—such as flight-risk determinations." *Xie Deng Chen v. Barr*, No. 1:20-CV-00007-SL, 2021 WL 2255873, at *4 (N.D. Ohio Feb. 5, 2021). *See also Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020) (district court lacked jurisdiction over petitioner's "challenge to his short re-detention for removal" concerning whether his release was revoked in accordance with regulation because of 8 U.S.C. § 1252(g)); *Portillo*, 2022 WL 826941, at * 7 n. 9 (explaining that the court lacks jurisdiction to review ICE's POCR decisions).

As such, Petitioner's claim that ICE's arrest and detention of Petitioner violated statute and regulation fails as ICE complied with its regulation in revoking Petitioner's supervised release.

### C. Petitioner's Statutorily Authorized Detention Is Constitutional.

Petitioner's claim that his detention violates the Fifth Amendment's Due Process Clause likewise fails because his detention comports with the framework set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), through which a due process challenge to a post-final order of detention must be analyzed. Petitioner does not face indefinite detention and will be released to Cambodia in the immediate future.

As recognized by the Supreme Court, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). When evaluating "reasonableness" of detention, the touchstone is whether an alien's detention continues to serve "the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. And here, it does.

To set forth a Constitutional violation for a Section 1231 detention, an individual must satisfy the *Zadvydas* test. *See Jimenez v. Cronen,* 317 F. Supp. 3d 626, 634 (D. Mass. 2018) (explaining that "*Zadvydas* addressed the substantive due process component of the Fifth

Amendment. The Supreme Court held, in effect, that an alien's right to substantive due process could be violated by prolonged detention even if the alien's right to procedural due process had been satisfied."); *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (explaining that "*Zadvydas*, largely, if not entirely forecloses due process challenges to § 1231 detention apart from the framework it established."); *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (the *Zadvydas* "test articulates the outer bounds of the Government's ability to detain aliens … without jeopardizing their due process rights.").

In *Zadvydas*, the Supreme Court held that the government cannot detain an alien "indefinitely" beyond the 90-day removal period. 533 U.S. at 682. The Supreme Court "read an implicit limitation into the statute … in light of the Constitution's demands" and held that Section 1231(a)(6), "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. The *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, the Supreme Court explained, an individual could file a habeas petition seeking release. *Id.* at 700-01. In such petition, the individual must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the individual does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.*

Petitioner's Due Process challenge fails under his present circumstances. To the extent Petitioner argues that his current detention violates the Constitution because he was previously released on an Order of Supervision, that argument is without merit. First, a prior release pursuant to an Order of Supervision does not provide Petitioner with a constitutional basis not to be arrested again in the future if ICE determines effectuation of his removal order is possible or if ICE

9

determines Petitioner has violated the terms of his Order of Supervision. As explained by another session of this Court, if "the government in granting discretionary relief to an alien foreswears its ability to later detain an alien as part of the removal mechanism, then the government would have every incentive to abstain from any favorable exercise of discretion." *Rodriguez-Guardado v. Smith,* 271 F. Supp. 3d 331, 335 (D. Mass. 2017). Stated similarly, a prior order of release on account of the lack of ability to remove an alien "did not amount to a permanent injunction against future detention." *Hango v. U.S. Att'y Gen.*, No. 3:05-CV-2196, 2019 WL 1301981, at *2 (W.D. La. Mar. 21, 2019).

Here, Petitioner does not face indefinite detention. ICE has recently been successful in removing Cambodian citizens to Cambodia. Accordingly, the detention of Petitioner—an alien who does not dispute that he is deportable—for less than one month for the limited period of effectuating his removal does not violate the Fifth Amendment.

## CONCLUSION

For the reasons described above, the Petition should be dismissed.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Nicole M. O'Connor*
NICOLE M. O'CONNOR
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3112
nicole.o'connor@usdoj.gov

Date: June 2, 2025

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any non-registered participants via first class mail.

                                        */s/ Nicole M. O'Connor*
                                        NICOLE M. O'CONNOR
                                        Assistant U.S. Attorney

Dated: June 2, 2025